Exp. # 2289

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF PUERTO RICO

| IN RE: ALEXIS RAMIREZ ROSADO | CIVIL NO. 23-01428 MCF |
|---|---|
| Debtor | Chapter 11 |

### MOTION TO DISMISS AND OPPOSITION TO EXTEND THE STAY

TO THE HONORABLE COURT:

Comes now, BANCO POPULAR DE PUERTO RICO ("BPPR"), secured creditor, represented by the undersigned attorney who respectfully prays, and states as follows:

### I. Brief Introduction

The present case is the <u>ninth bankruptcy petition for Debtor</u>, filed within the period of the bad faith presumption stated in 11 U.S.C § 362 (c) (3) (C) (I), and, as well as previous petitions, with the sole intention to stop a judicial sale process. Moreover, an active bankruptcy case, 19-06807 EAG13, remains open for co-owner (her 6th bankruptcy petition), where an order lifting the stay in favor of Movant was entered at Docket 133 on July 12, 2021.

A brief summary of the relevant facts of the case is mandatory in order to place the Court in a position to make justice and at the same time to send a clear message in this jurisdiction that the Courts will not tolerate "*abusive bad faith filings*"; the bankruptcy relief is intended for the honest unfortunate individuals.

A voluntarily filed chapter 11 petition is subject to dismissal under 11 U.S.C.A. § 1112 if "not filed in good faith." *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988). This good faith requirement is rooted in equity and intended to prevent abuse of the Chapter 11 process. *Matter of Little Creek Dev. Co.*, 779 F.2d 1068 (5th Cir. 1986). "A good faith standard protects the jurisdictional integrity of the bankruptcy courts…". The Court should examine, then, if the Chapter 11 petition was filed "to delay or frustrate the legitimate efforts of secured creditors to enforce their rights." *In re Phoenix Piccadilly, supra*. Without any doubt, as the facts will show, these case and prior

Exp. # 2289

petitions, were filed to frustrate several foreclosure sales as part of BPPR's legitimate efforts to enforce their rights over the Debtor's property.

## II. The Facts

1. Debtor's multiple filings are itemized as follows:

| Case Number | Chapter | Date Filed | Status |
|---|---|---|---|
| **88-01487** | Ch13 | 5/31/1988 | 5/15/1989 Terminated. |

Terminated in less than one year.

| | | | |
|---|---|---|---|
| **89-01327** | Ch13 | 4/05/1989 | 10/03/1989 Dismissed. |

Dismissed, for lack of payment and gross misrepresentation.

| | | | |
|---|---|---|---|
| **90-06993** | Ch13 | 12/26/1990 | 12/28/1995 Discharged. |
| **97-06819** | Ch13 | 06/26/1997 | 11/10/1999 Dismissed. |

Filed less than 18 months from being discharged.

| | | | |
|---|---|---|---|
| **09-04860** | Ch13 | 06/15/2009 | 03/18/2010 Dismissed. |

Filed with joint debtor, dismissed.

| | | | |
|---|---|---|---|
| **11-02825** | Ch7 | 03/31/2011 | 04/28/2015 Discharged. |

CH7 filed with joint debtor, discharged, after reconsidering dismissal. Lift of Stay in favor of BPPR.

| | | | |
|---|---|---|---|
| **17-01713** | Ch13 | 03/14/2017 | 10/19/2020 Discharged. |

Filed less than 2 years from being previously discharged. The petition was filed to stop the Judicial Sale scheduled for 3/16/2017 (Exhibit 1), two (2) days before the scheduled judicial sale. Stay was lifted in favor of BPPR on 08/22/2017.

| | | | |
|---|---|---|---|
| **22-01853** | Ch13 | 06/29/2022 | 04/20/2023 Dismissed. |

Filed less than 2 years from being previously discharged. Judicial sale was scheduled for June 29, 2022 (Exhibit 2) and Debtor filed the petition on the same day. Dismissed on 11/8/2022 and reconsidered 12/06/2022. Stay was lifted in favor of BPPR on 1/31/2023. Dismissed on 4/20/2023.

| | | | |
|---|---|---|---|
| **23-01428** | Ch11 | 05/12/2023 | ----- |

Filed less than 30 days from the last dismissal, this Chapter 11 case was also filed to stop the judicial sale scheduled for the next working day, Monday, May 15, 2023 (Exhibit 3).

Exp. # 2289

2. In summary, debtor's bad faith is evidenced by: *(i)* debtor's extensive and impressive record of bankruptcy petitions, *(ii)* the constant filing of bankruptcy petitions just hours before the judicial sale are scheduled, *(iii)* his inability to get a confirmed Plan in the unsuccessful prior bankruptcy petition; *(iv)* having orders for lift of the stay in favor of BPPR in several prior bankruptcy petitions, *(v)* the time frame between petitions, being the last bankruptcy case dismissed less than 30 days prior to the filing of a new bankruptcy case.

3. BPPR is the creditor of a residential loan mortgage note ending in 5309 and related to Claim 1. The mortgage deed is duly registered and encumbers the property located at 28-17 Calle 13, Urb. Santa Rosa, Bayamón, PR. *See* Proof of Claim 1.

4. Debtor in this case purchase the mortgaged property from the original borrowers in March, 2006. For more than SIXTEEN (16) years, the Debtor in this case has been living the property without making any payments to BPPR. SIXTEEN years has elapsed without receiving payments to the mortgage and over $18,000.00 in expenses for several legal procedures related to foreclosure and six (6) different bankruptcy proceedings, including the current active procedure related to co-owner Elsie Enid Berríos Salgado, case 19-06807-EAG13. *See* Claim 1.

5. If we consider, not only the extensive multiple filing, but that including the fact that the last three bankruptcy cases have been filed just hours prior to the scheduled judicial sale, is not difficult to understand that this Debtor is playing with the judicial system, which provides for a fresh start to the honest debtor.

6. Although we strongly believe in the opportunity of a fresh start, we can also ask ourselves, "but how many fresh starts does a debtor should have?" The Debtor in this case has three (3) previous discharges, including a Chapter 7 discharge; 2 of those discharges were ordered less than two years apart from a previous discharge. The other petitions have been dismissed for several reasons, including misrepresentation.

7. The instant case was filed less than 30 days after the last dismissal; and just one working day prior to the scheduled judicial sale, evidence that the bankruptcy petition -no Plan has been filed yet- was filed in *"bad faith"*.

8. At the moment, the mortgage note related to debtor's property has accrued <u>193 monthly installments and other charges and fees, for a total amount of pre-petition arrears of $161,858.69</u>. Total debt is $210,113.51. In other words, Debtor has enjoyed a property for 16 years without paying the mortgage.

9. The judicial sale process, after several orders for lift of stay in favor of BPPR in previous cases, with the intention of foreclosing in rem, have been repetitively blocked by Debtor, with the filing of new bankruptcy petitions. It is time, not only to deny the continuance of the stay, but to dismiss this 9th petition, and to bar Debtor from filing new petitions in an 18-month period.

### III. The Code and the Jurisprudence

<u>Dismissal with Prejudice (Bad Faith)</u>

10. The power of the Court to dismiss a case with prejudice is deeply rooted in Section 105(a), interpreted in conjunction with Section 349(a) of the Code, 11 USCS §§ 105 (a) and 349 (a). Section 105 (a), supra, states:

> "(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

11. On the other hand Section 349 (a), supra, states as follows:

> "(a) Unless the court, for cause, order otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109 (g) of this title."

12. "Courts have routinely found bad faith and dismissed cases in circumstances where debtors have filed to purposely delay a creditor's inevitable recovery of its property." *In re On the Ocean, Inc.*, 2016 WL 8539791, at 2. The Court, in the case of *In re Hamer*, 2000 U.S. Dist. LEXIS

12341, 244 B.R. 589 (E.D. Pa. 2000), reconciling the provisions of Sections 105 (a) and 349 (a), supra, expressed:

> "Section 349(a) of the Bankruptcy Code provides that a case may be dismissed with prejudice where cause exists… Together, therefore, §§ 105(a) and 349(a) enable the bankruptcy court to restrict a debtor's ability to file subsequent petitions."

13. In a case similar to the captioned case, Javens vs. Ruskin, 2000 U.S. Dist. LEXIS 13017 (E.D. Mich. 2000), the Court ruled that the bankruptcy court has authority and did not abuse its discretion in dismissing a Chapter 13 case with bar to refilling for 18 months.

> "This Court […] concludes that the Bankruptcy Court had the authority to bar future filings in excess of 180 days…". In re Casse, supra, 219 B.R. 657 (Bankr. E.D.N.Y. 1998). [I]n all circuits but the Tenth, bankruptcy courts and district courts invariably derive from § 105 (a) or § 349 (a) of the Code, or from both section in some cases, the power to sanction bad-faith serial filers such as the Casse and prohibiting further bankruptcy filings for longer periods of time that the 180 days specified by § 109 (g)… We take this opportunity to ally ourselves with the Fourth Circuit [Colonial Auto Center v. Tomlin (In re Tomlin), 105 F.3d 933 (4th Cir. 1997)] and the great majority of lower courts which derive from §§ 105(a) and 349(a) of the Code, the bankruptcy court's power, in an appropriate case, to prohibit a serial filer from filing petitions for periods of time exceeding 180 days. We join those courts in concluding that § 109(g) does not impose a temporal limitation upon those other section…" [T]he qualifying phrase in § 349(a) applies both to the clause preceding the semi-colon and the clause following the semi-colon…. This reading of § 349 means that a debtor may be prejudiced from filing subsequent bankruptcy petitions under two circumstances: (1) if the court, for cause, so orders, or (2) if the terms of § 109(g) apply to the debtors' case".

14. The facts of this case clearly indicate that we are in the presence of a repeating bad faith filer, who has, somehow, managed to file his 9th voluntary petition, while the last 3 petitions were filed just hours before the scheduled foreclosure sale. All circuits have recognized that bad faith is ground enough for dismissal of a bankruptcy petition.[1]

---

[1] See In re SGL Carbon Corp., 200 F.3d 154, 160 (3d Cir. 1999); Marsch v. Marsch, 36 F.3d 825, 828 (9th Cir. 1994); In re Winslow, 123 B.R. 641, 646-47 (10th Cir. 1991); First Nat'l Bank of Sioux City v. Kerr (In re Kerr), 908 F.2d 400, 404 (8th Cir. 1990); Little Creek Dev. Co. v. Commonwealth Mortgage, 779 F.2d 1068, 1072 (5th Cir. 1986); In re Madison Hotel Assocs., 749 F.2d 410, 426 (7th Cir. 1984); Connell v. Coastal Cable TV, 709 F.2d 762, 765 (1st Cir. 1983); see also C-TC 9th Ave. P'ship. v. Norton Co., 113 F.3d 1304, 1310 (2d Cir. 1997) (stating that implicit good faith standard is required for bankruptcy petitions because it "furthers the balancing process between the interests of debtors and creditors."); Carolin Corp. v. Miller, 886 F.2d 693, 699 (4th Cir. 1989) ("a generalized good faith requirement appears implicit in § 1112(b)."); Phoenix Picadilly Ltd. v. Life Ins. Co., 849 F.2d 1393, 1394 (11th Cir. 1988) ("A case under Chapter 11 may be dismissed for cause pursuant to section 1112 of the Bankruptcy Code if the petition was not filed in good faith.").

15. Section 1112(b)(4) of the Bankruptcy Code provides a non-exhaustive list of "cause" to dismiss a bankruptcy case. *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072-73 (5th Cir. 1986). A case is not filed in good faith unless it has a valid bankruptcy purpose. *In re SGL Carbon Corp.*, 200 F.3d 154, 165 (3d Cir. 1999). If a petition is filed with the clear intention to obtain a tactical litigation advantage, it should be dismissed. *In re 15375 Mem'l Corp.*, 589 F.3d 605, 618 (3d Cir. 2009).

16. Although there is no specific test for determining whether a debtor has filed a petition in bad faith, courts consider factors which evidence "intent to abuse the judicial process and the purposes of the reorganization provisions" or factors showing, as in the instant case, that the petition was filed to frustrate the legitimate efforts of secured creditors to enforce their rights. *See Matter of Nw. Place, Ltd.*, 73 B.R. 978, 982 (Bankr. N.D. Ga. 1987).

17. It is precisely these bad faith practices that Congress intended to prevent with the amendments enacted in the **Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.** Section 362 (c) (3) (C) (I) of the Code, 11 U.S.C § 362 (c) (3) (C) (I) establishes that a case is presumptively filed not in "good faith" as to all creditors if a previous case under any of chapters 7, 11 and 13 -in which the individual was debtor- was pending within the preceding one year period. That is the case in the instant bankruptcy petition. 18. While Section 362 (c) (3) (C) (II) (cc) of the Code also rises a bad faith presumption if, as in this case, a previous case in which the individual was debtor, was dismissed within the preceding one (1) year period after the debtor failed to perform the terms of a confirmed plan.

18. In other matters, the Debtor filed at Docket 12, a motion for the continuation of the automatic stay. The Court granted 14 days to file an objection to the continuation of the stay. For what's been above stated in this motion, BPPR objects to the continuation of the stay.

19. Included is a Verified Statement Verified Statement regarding the information required by the Service Member Civil Relief Act of 2003 and a Department of Defense Manpower Data Center Military Status Report.

Exp. # 2289

WHEREFORE, BPPR opposes the continuation of the automatic stay filed at Docket 12, and requests from this Court the dismissal of the instant case with bar to refile for 18 months. The undersigned attorney informs that he will be out of the jurisdiction from June 2 to June 12, 2023, and from June 19 to June 23, 2023.

## NOTICE

Within thirty (30) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the Clerk's office of the U.S. Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the paper will be deemed unopposed and may be granted unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the Court, the interest of justice requires otherwise.

## CERTIFICATE OF ELECTRONIC FILING AND SERVICE

I hereby certify that on this date copy of this motion has been electronically filed with the Clerk of the Court using the CM/ECF system which will sent notification of such filing to debtor(s) attorney and to **MONSITA LECAROZ ARRIBAS**, US Chapter **11** Trustee, and also certify that I have mailed by United State Postal Service copy of this motion to non CM/ECF participant at their address of record in this case.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on the 23rd day of May, 2023.

**COLÓN SANTANA & ASOCIADOS, CSP**
Attorney for Banco Popular de Puerto Rico
315 Coll & Toste, San Juan, PR 00918
Tel: 787-763-4111/Fax: 787-766-1289

*s/ Kevin Miguel Rivera Medina*
USDC-PR No. 223914
e-mail: kmrquiebras@gmail.com

1295.040
0700345309

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE BAYAMON**

| | |
|---|---|
| **BANCO POPULAR DE PUERTO RICO**<br><br>**Demandante**<br><br>vs.<br><br>ALEXIS RAMIREZ ROSADO t/c/c ALEXIS RAMIREZ su esposa, ELSIE E. BERRIOS SALGADO t/c/c ELSIE ENID BERRIOS SALGADO y como ELSIE E. BERRIOS; GOBIERNO DE LOS ESTADOS UNIDOS DE AMERICA<br><br>**Demandada** | **CIVIL NÚM.: DCD2013-2003**<br>**SALA: 502**<br><br>**SOBRE:**<br><br>**EJECUCIÓN DE HIPOTECA POR LA VÍA ORDINARIA** |

**EDICTO DE SUBASTA**

A: **ALEXIS RAMIREZ ROSADO t/c/c ALEXIS RAMIREZ**
Su esposa, **ELSIE E. BERRIOS SALGADO t/c/c**
**ELSIE ENID BERRIOS SALGADO y como**
**ELSIE E. BERRIOS**

Urb. Santa Rosa
28-17 Calle 13
Bayamón, PR 00956

A: **GOBIERNO DE LOS ESTADOS UNIDOS DE AMERICA**

A: **BANCO POPULAR DE PUERTO RICO**

**AL PUBLICO EN GENERAL:**

El Alguacil que suscribe por la presente anuncia y hace constar que en cumplimiento de una Sentencia dictada en el caso del epígrafe el día 7 de noviembre de 2013, enmendada Nunc Pro Tunc el 20 de febrero de 2014, procederá a vender el día _16_ de _Marzo_ de _2017_ a las _10:45_ de la _AM_ en mi oficina localizada en el Tribunal de Primera Instancia, Sala de Bayamón, al mejor postor y por dinero en efectivo, cheque de gerente o letra bancaria con similar garantía, todo título, derecho o interés de la parte demandada de epígrafe sobre el inmueble que se describe a continuación:

**URBANA:** Solar radicado en la **URBANIZACIÓN SANTA ROSA**, situada en el Barrio Juan Sánchez de Bayamón, Puerto Rico, que se describe en el plano de inscripción de la urbanización, con el área y colindancias que se relacionan a continuación: Número del solar 17 de la Manzana A 28", con el área del solar de 315.00 metros cuadrados. En lindes: por el Norte, con el solar número 18, distancia de 21.00 metros; por el Sur, con el solar número 16, distancia de 21.00 metros; por el Este, con el solar número 10, distancia de 15.00 metros; y por el Oeste, con la calle número 13, distancia de 15.00 metros. Contiene una casa de concreto para una familia.

Finca 18,849, inscrita al Folio 246 del Tomo 416 de Bayamón, Registro de Bayamón, Sección I.

Dicha subasta se llevará a cabo para satisfacer a la parte demandante el importe de la Sentencia que ha obtenido, ascendente al 1 de abril de 2007 a la suma de **$79,064.01** por concepto de principal, más los intereses acumulados conforme pactados a razón del 7.50% anual desde aquella fecha y hasta la total satisfacción de la deuda, más los recargos por mora pactados y las partidas por seguro hipotecario, más cualesquiera otras cantidades pactadas en la escritura de hipoteca, más una cantidad equivalente al 10% del principal original del pagaré para gastos, costas y honorarios de abogado, más cualesquiera otros adelantos que se hagan en virtud del pagaré y la escritura de hipoteca.

La hipoteca ejecutada en el caso de epígrafe se describe de la siguiente manera:

**HIPOTECA:** Constituida por Glenda Rose Nazario López hoy casada con Luis Cruz Maldonado y Ana López Rodríguez y su esposo, Héctor Nazario Córtes, en garantía de un pagaré a favor de POPULAR MORTGAGE, INC., o a su orden, por la suma de $91,258.00, con intereses al 7 1/2% anual, y vencedero el 1 de marzo de 2027, según escritura número 80, otorgada en San Juan, a 18 de febrero de 1997, ante el notario Rafael F. Morales Cabranes. Inscrita al folio 253 del tomo 1519 de Bayamón.

Los autos y todos los demás documentos correspondientes al procedimiento iniciado estarán de manifiesto en la Secretaría del Tribunal de Primera Instancia de Puerto Rico, Sala de Bayamón, durante horas laborables.

Se informa a toda persona con interés sobre el inmueble a ser subastado, y a todo posible licitador, que el inmueble antes descrito ha sido tasado en la suma de **$91,258.00** para que dicha suma sirva de tipo mínimo en la primera subasta a celebrarse.

Se entenderá que todo licitador acepta como bastante la titulación del inmueble y que las cargas y gravámenes anteriores y los preferentes, si los hubiere, al crédito del ejecutante, continuarán subsistiendo, entendiéndose que el rematante los acepta y queda responsable de los mismos sin destinarse a su extinción el precio del remate. Esto incluye las contribuciones sobre la propiedad inmueble si es que existe alguna.

Se le notifica y advierte por este medio a los Acreedores con créditos de inferior rango al de la parte ejecutante, que pueden concurrir a la subasta si les conviniere y/o que pueden satisfacer antes del remate el importe del crédito, con sus intereses, costas y honorarios de abogado asegurados, quedando entonces subrogados en los derechos del Acreedor ejecutante. La propiedad a ser ejecutada se adquirirá libre de cargas y gravámenes posteriores.

En particular, notificamos a los siguientes acreedores posteriores:

**EMBARGO FEDERAL:** Anotado contra Alexis Ramírez, seguro social XXX-XX-0655, por la suma de $231,569.22, según notificación número 415772508, presentada el 25 de febrero de 2008, al asiento 3 del diario 68 del Libro de Embargos Federales número 8.

**PRESENTACION:** Presentada el 18 de diciembre de 2015, al asiento 180 del diario 1323, Demanda de fecha 22 de julio de 2013, ante el Tribunal de Primera Instancia, Sala Superior de Bayamón, en el caso civil número DCD 13-2003 (502), seguido por Banco Popular de Puerto Rico vs. Alexis Ramírez Rosado también conocido como Alexis Ramírez y su esposa, Elsie E. Berrios Salgado también conocida como Elsie

Enid Berrios Salgado y como Elsie E. Berrios, sobre cobro de dinero y ejecución de hipoteca, en la que se reclama el pago de hipoteca, con un balance de $79,064.01 y otras cantidades, o la venta en pública subasta de la propiedad. Pendiente de anotación.

En caso de no producirse remate ni adjudicación en la primera subasta del antedicho bien inmueble, se celebrará una segunda subasta en el mismo lugar antes mencionado el __23__ de __Marzo__ de __2017__ a las __10:45__ de la _____, sirviendo de tipo mínimo para dicha segunda subasta, las 2/3 partes del antes mencionado tipo mínimo.

En caso de no producirse remate ni adjudicación en la segunda subasta del antedicho bien inmueble, se celebrará una tercera subasta, también en el lugar antes mencionado, el día __30__ de __Marzo__ de __2017__ a las __10:45__ de la __AM__, sirviendo como tipo mínimo para dicha tercera subasta, la mitad (1/2) del tipo mínimo fijado para la primera subasta.

Este Edicto se publicará en el Tablón de Edictos de este Tribunal y en dos lugares públicos del Municipio de Bayamón, donde se celebrarán las subastas señaladas. Se publicará, además, en un periódico de circulación general en dos ocasiones. Este aviso será enviado mediante correo certificado a la última dirección conocida de la parte demandada.

En Bayamón, Puerto Rico, hoy _____ de _____ de 2016.

DEC 05 2016

_____
ALGUACIL

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
CENTRO JUDICIAL DE BAYAMÓN
SALA SUPERIOR

| | |
|---|---|
| **BANCO POPULAR DE PUERTO RICO**<br>**Demandante**<br><br>vs.<br><br>**ALEXIS RAMIREZ ROSADO T/C/C ALEXIS RAMIREZ, SU ESPOSA ELSIE E. BERRIOS SALGADO T/C/C ELSIE ENID BERRIOS SALGADO Y COMO ELSIE E. BERRIOS; GOBIERNO DE LOS ESTADOS UNIDOS DE AMERICA**<br>**Demandados** | **CIVIL NÚM. DCD2013-2003**<br>**SALA: 502**<br><br>**SOBRE:**<br><br>**EJECUCIÓN DE HIPOTECA IN REM** |

**EDICTO DE SUBASTA**

ESTADOS UNIDOS DE AMERICA          )
EL PRESIDENTE DE LOS ESTADOS UNIDOS    )    SS
EL ESTADO LIBRE ASOCIADO DE PUERTO RICO  )

A: **ALEXIS RAMIREZ ROSADO T/C/C ALEXIS RAMIREZ, SU ESPOSA ELSIE E. BERRIOS SALGADO T/C/C ELSIE ENID BERRIOS SALGADO Y COMO ELSIE E. BERRIOS Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS; HECTOR NAZARIO CORTES, SU ESPOSA ANA LOPEZ RODRIGUEZ Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS; GLENDA ROSE NAZARIO LOPEZ, SU ESPOSO LUIS CRUZ MALDONADO Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS; ESTADOS UNIDOS DE NORTE AMERICA P/C FISCALIA FEDERAL; DEPARTAMENTO DE HACIENDA DE PUERTO RICO POR CUALQUIER CONTRIBUCION ADEUDADA Y AL PUBLICO EN GENERAL:**

**CERTIFICO Y HAGO CONSTAR**: Que en cumplimiento de un Mandamiento de Ejecución de Sentencia que me ha sido dirigido por el Secretario del Tribunal de Primera Instancia, Sala Superior de **Bayamón**, en el caso de epígrafe, venderé en pública subasta y al mejor postor, por separado, de contado y por moneda de curso legal de los Estados Unidos de América, en mi oficina sita en el Edificio del Tribunal de Primera Instancia, Sala Superior de Bayamón, el **día 29 de junio de 2022**, a las **10:45** de la **mañana**, todo título, derecho, participación y/o interés que le corresponda o pueda corresponderle a la parte demandada y/o cualquiera de ellos en el inmueble hipotecado objeto de ejecución que se describe a continuación:

**URBANA:** Solar radicado en la **URBANIZACIÓN SANTA ROSA**, situada en el Barrio Juan Sánchez de Bayamón, Puerto Rico, que se describe en el plano de inscripción de la urbanización, con el área y colindancias que se relacionan a continuación: Número del solar diecisite (17) de la Manzana "A" veintiocho (A28), con el área del solar de **TRESCIENTOS QUINCE PUNTO CERO CERO (315.00 M/C) METROS CUADRADOS**. En lindes: por el **NORTE**, con el solar número dieciocho (18), distancia de veintiuno punto cero cero (21.00) metros; por el **SUR**, con el solar número dieciséis (16), distancia de veintiuno punto cero cero (21.00) metros: por el **ESTE**, con el solar número diez (10), distancia de quince punto cero cero (15.00) metros; y por el **OESTE**, con la calle número trece (13), distancia de quince punto cero (15.00) metros. Contiene una casa de concreto para una familia.------------------------------------------------------------------

**Finca 18,849, inscrita al Folio 246 del Tomo 416 de Bayamón, Registro de Bayamón, Sección I.**

**DIRECCION: URB SANTA ROSA
28-17 Bayamón PR 00956**

Se establece como tipo mínimo para la primera subasta la suma de **$91,258.00.**

De ser necesaria una segunda subasta por declararse desierta la primera, la misma se celebrará en mi oficina, sita en el Tribunal de Primera Instancia, Sala Superior de **Bayamón**, el **día 6 de julio de 2022,** a las **10:45** de la **mañana** y se establece como tipo mínimo para dicha segunda subasta la suma de **$60,838.66**, equivalente a 2/3 partes del tipo mínimo establecido para la primera.

De no adjudicarse la propiedad en esa segunda subasta, se celebrará una tercera subasta en mi oficina, sita en el Tribunal de Primera Instancia, Sala Superior de **Bayamón**, el **día 13 de julio 7th de 2022,** a las **10:45** de la **mañana**, y se establece como tipo mínimo para dicha tercera subasta la suma de **$45,629.00**, equivalente a la mitad del tipo mínimo establecido para la primera subasta.

Dicha subasta se llevará a cabo para con su producto satisfacer a la parte demandante el importe de la Sentencia dictada a su favor ascendente a la suma de **$79,064.01** de principal, más los intereses devengados a razón de **7.50%** anual desde el día **1ro de abril de 2007**, hasta su total y completo pago; cargos por demora de todos aquellos pagos con atrasos en exceso de la fecha de vencimiento hasta el total y completo repago de la deuda; los créditos accesorios y adelantos hechos en virtud de la escritura de hipoteca; más las costas, gastos y honorarios de abogado del demandante según pactados en el pagaré y en el contrato de hipoteca y cualesquiera otros adelantos para el pago de contribuciones y pólizas de seguro hechos por la demandante.

Se notifica a todos los interesados que todas las actas y demás constancias del expediente de este caso están disponibles en la Secretaría del Tribunal durante las horas laborables para ser examinadas.

Se entiende que todo licitador acepta como bastante la titularidad que da base a la misma.

La susodicha venta en pública subasta, se verificará libre de toda carga o gravamen que afecte dicha propiedad con rango posterior al gravamen aquí ejecutado. A su vez cualquier gravamen preferente al crédito que da base a esta ejecución continuará subsistente, entendiéndose que el adjudicatario en la subasta lo acepta y queda subrogado en la responsabilidad de su pago.

Y para conocimiento de la parte demandada, de todas aquellas personas que tengan interés inscrito con posterioridad a la inscripción del gravamen objeto de ejecución, de todos los licitadores y del público en general, expido el presente Edicto de Subasta para su publicación dos (2) veces por espacio de dos (2) semanas consecutivas con un intervalo de por lo menos siete (7) días entre ambas publicaciones en un diario de circulación general en Puerto Rico, así como para su publicación por espacio de dos (2) semanas en tres (3) sitios públicos del Municipio de **Bayamón**, Puerto Rico, expedido el mismo en **Bayamón**, Puerto Rico, hoy día ____ de MAY 3 1 2022 de 2022.-

*José F. Marrero Robles*
**ALGUACIL**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE BAYAMON**

**FRAU & ASOCIADOS**
**PO BOX 331150**
**PONCE, PR 00733-1150**
**TELS. (787) 984-3013 / 843-3404**
**FAX: (787) 843-3431**

JOSÉ F. MARRERO ROBLES
ALGUACIL AUXILIAR
PLACA #131

CamScanner 15-05-2023 11.07.pdf     Print     Save to OneDrive     Show email

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**CENTRO JUDICIAL DE BAYAMÓN**
**SALA SUPERIOR**

| BANCO POPULAR DE PUERTO RICO<br>Demandante | CIVIL NÚM. DCD2013-2003<br>SALA: 502 |
|---|---|
| vs. | SOBRE: |
| ALEXIS RAMIREZ ROSADO T/C/C ALEXIS RAMIREZ, SU ESPOSA ELSIE E. BERRIOS SALGADO T/C/C ELSIE ENID BERRIOS SALGADO Y COMO ELSIE E. BERRIOS; GOBIERNO DE LOS ESTADOS UNIDOS DE AMERICA<br>Demandados | EJECUCIÓN DE HIPOTECA POR LA VIA ORDINARIA |

**ACTA DE SUBASTA NEGATIVA**

La primera subasta en ejecución de la Sentencia dictada en el presente caso que señalada para tener lugar hoy día 15 de mayo de 2023, a las 10:30 de la mañana, en es oficina del Alguacil del Tribunal de Primera Instancia, Sala de Bayamón.

Llegada la hora señalada para la celebración de la susodicha subasta, compared ante este Alguacil la representación de la parte demandante e informa que por haber acogido la parte demandada a la protección del Capítulo 11 de la Ley Federal de Quiebra caso número 23-01428-MCF-11, se paraliza todo procedimiento en el presente caso y s deja sin efecto la subasta señalada para tener lugar en el día de hoy. De igual manera, s encontraba la parte demanda presente.

En Bayamón, Puerto Rico, a 15 de mayo de 2023.

Alguacil
Tribunal de Primera Instancia
Centro Judicial de Bayamón

MARIBEL LANZAR VELÁZQUEZ
ALGUACIL PLACA 735

**EXHIBIT B**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **IN THE MATTER OF:** | CASE NO. 23-01428 MCF |
| ALEXIS RAMIREZ ROSADO & ELSIE ENID BERRIOS SALGADO  **Debtor(s)** | CHAPTER 13 |

## VERIFIED STATEMENT

I, Kevin Miguel Rivera-Medina, of legal age, Attorney for Banco Popular Puerto Rico and resident of San Juan, Puerto Rico, declare under penalty of perjury as follows:

That as to this date, by a search and review of the records kept by BANCO POPULAR PUERTO RICO - MORTGAGE DIVISION in the regular course of business in regard to debtor(s) account with this bank there is no information that will lead the undersign to belief that debtor(s) is(are) a regular service member(s) either on active duty or under a call to active duty, in the National Guard or as a Commission Officer of the Public Health Services or the National Oceanic and Atmospheric Administration (NOAA) in active duty.

The bank has not received any written notice from debtor(s) that his military status has change as to this date.

That as part of my search I examined the documents and records available to me within our computer system.

I hereby certify the aforementioned statements under penalty of perjury, in San Juan, Puerto Rico, this 23rd day of May, 2023.



Case:23-01428-MCF11 Doc#:20 Filed:05/23/23 Entered:05/23/23 17:46:30 Desc: Main
Department of Defense Manpower Data Center Document   Page 15 of 18   Results as of : May-23-2023 05:28:22 PM

SCRA 5.16



# Status Report
## Pursuant to Servicemembers Civil Relief Act

| | |
|---|---|
| SSN: | XXX-XX-0655 |
| Birth Date: | |
| Last Name: | RAMIREZ ROSADO |
| First Name: | ALEXIS |
| Middle Name: | |
| Status As Of: | May-23-2023 |
| Certificate ID: | SK7WR2CYGCP12N5 |

| On Active Duty On Active Duty Status Date ||||
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date ||||

| Left Active Duty Within 367 Days of Active Duty Status Date ||||
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date ||||

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date ||||
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty ||||

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard).  This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA  93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

Case:23-01428-MCF11 Doc#:20 Filed:05/23/23 Entered:05/23/23 17:46:30 Desc: Main
Department of Defense Manpower Data Center Document    Page 17 of 18    Results as of : May-23-2023 02:39:17 PM

SCRA 5.16



# Status Report
## Pursuant to Servicemembers Civil Relief Act

| | |
|---|---|
| SSN: | XXX-XX-5275 |
| Birth Date: | |
| Last Name: | BERRIOS SALGADO |
| First Name: | ELSIE |
| Middle Name: | ENID |
| Status As Of: | May-23-2023 |
| Certificate ID: | MY67P2S57N9KXW1 |

| On Active Duty On Active Duty Status Date ||||
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date ||||

| Left Active Duty Within 367 Days of Active Duty Status Date ||||
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date ||||

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date ||||
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty ||||

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard).  This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA  93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information:  (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods.  Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service.  Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING:  This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.